In re MARBELLA AND COMPANY
OF OHIO, INC., dba Wapak
Truck Plaza.

Bruce C. FRENCH, Trustee
et al., Plaintiffs,

v.

The FIFTH THIRD BANK OF WESTERN OHIO, N.A., Defendant and
Third Party Plaintiff,

v.

Harold T. PANCIERA, Jr., et al.,
Third Party Defendants.

Bankruptcy No. 1–90–0075.
Adv. No. 90–0088.

United States Bankruptcy Court,
N.D. Ohio, W.D.

May 7, 1992.

Randy L. Reeves, Lima, Ohio, for the Millers.

Donna M. Weaver, Toledo, Ohio, Dennis P. Faller, Wapakoneta, Ohio, for the bank.

Diane French, Lima, Ohio, for Trustee.

OPINION AND ORDER PERMITTING PARTIAL SETOFF AND GRANTING JUDGMENT AGAINST DEFENDANT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon plaintiff trustee's motion for summary judgment of the complaint to recover property, specifically cash deposits at, and a setoff by, defendant Fifth Third Bank of Ohio; plaintiffs/creditors Robert and Henrietta Miller's motion for summary judgment requesting that their security interest in the proceeds be entitled to priority; opposition thereto by defendant Fifth Third Bank of Western Ohio to the plaintiffs' motions for summary judgment; and defendant's cross motion for summary judgment requesting dismissal of plaintiffs' complaint. Upon consideration thereof, the court finds that the setoff by defendant Fifth Third Bank of Western Ohio in the amount of $97,748.80 improved its position within 90 days of the date of Debtor's petition in the amount of $74,515.48 which the trustee is entitled to recover and that plaintiffs Millers' claim to these funds is denied.

## FACTS

This complaint was filed by the Debtor in possession during the pendency of its chapter 11 case. However, upon conversion of Debtor's case to a case under chapter 7, the trustee assumed prosecution of this complaint. Furthermore, Robert Miller and Henrietta Miller [the Millers], at their request, were joined as party plaintiffs. The parties have stipulated:

1. That the Debtor's chapter 11 bankruptcy proceeding was filed on March 9, 1990.

2. At the time of filing of voluntary chapter 11 proceeding, the Debtor had a commercial checking account with the defendant, Fifth Third Bank, [hereinafter the bank] Account Number 760–30281.

3. The Debtor had said operating account in existence more than ninety (90) days prior to the date of filing its chapter 11 proceeding.

4. December 8, 1989 is ninety (90) days prior to the date the Debtor filed its chapter 11 proceeding.

5. That the account balance in said account on December 8, 1989 as per the bank statement of [the bank] was $46,871.19.

6. That the account balance in said account on December 7, 1989 as per the bank statement of Fifth Third was $48,549.03.

7. The checks posted on December 7, 1989 as per the bank statement of [the bank] were $4,789.45.

8. Total deposits on December 8, 1989 as per the bank statement of [the bank] were $9,470.83.

9. That on March 6, 1990, [the bank] offset $87,168.37 from the Debtor's checking account as evidenced by its statement and cashier check issued March 6, 1990.

10. On March 7, 1990, [the bank] offset an additional $10,580.43, from the Debtor's checking account as evidenced by a cashier's check dated the same date.

11. On March 12, 1990, the Bank credited $2,842.76 to the Debtor's checking account. Said amount was credited back as a result of a returned check which was deposited in the Debtor's checking account and dishonored by the Bank upon which said check was drawn. The deposit on March 12 of $2,842.76 was honored by [the bank] by crediting back part of the money offset and by increasing the loan balance on the note in the amount of $300,000.00.

12. On March 12, 1990, the Bank credited $6,670.83 to the Debtor's checking account. Said amount was credited back as a payment on one of the Debtor's commercial loan accounts. Check No. 3807 was in the amount of $6,670.83. Said check was a payment in process on the $300,000.00 note. This check constituted the return of a debit item in the amount of $6,670.83 credited to the account on March 12, 1990.

13. On March 13, 1990, the Bank credited $433.27 to the Debtor's checking account. Said amount was credited back as a result of a returned check which was deposited in the Debtor's checking account and dishonored by the Bank upon which said check was drawn. The deposit on March 12 of $433.27 was honored by [the bank] by crediting back part of the money offset and by increasing the loan balance on the note in the amount of $300,000.00.

14. That the Debtor entered into a transaction to purchase the business known as the Wapak Truck Plaza with [the Millers].

15. The Debtor entered into a security agreement in order to secure the obligation stated therein and granting [the Millers] a security interest in the collateral listed therein.

16. Said security agreement contains no date as to the date of execution by either the secured party or the Debtor named therein.

17. The Debtor also executed U.C.C.–1's setting forth the same collateral as the security agreement and filed for record in the Auglaize County Recorder's Office on the 28th day of August 1986 and with the Secretary of State's Office on the 29th day of August 1986.

18. On May 20, 1987, [the bank] loaned the sum of $300,000.00 to the Debtor which was deposited in Account Number 760–30281 on June 1, 1987. The purpose of said loan as stated on the application was "purchase Greyhound Food Management—Wapak Truck Plaza."

19. In order to secure the $300,000.00 loan, a security agreement dated May 20, 1987 was executed in favor of [the bank]. Said security agreement provided for security in the collateral listed therein.

20. In conjunction with signing of the security agreement, financing statements were also signed. Said financing statements were duly recorded with the Auglaize County Recorder's Office on July 1, 1987 along with the Secretary of State's Office on July 2, 1987.

21. On October 7, 1989, [the bank] loaned the sum of $100,000.00 to the Debtor, the proceeds of which were deposited in Account Number 760–30281 on October 10, 1989. The purpose of said loan was for capital improvements and purchase of inventory.

22. In order to secure the $100,000.00 loan, a security agreement dated October 7, 1989 was executed in favor of [the bank]. Said security agreement provided for security in the collateral as listed therein.

23. In conjunction with signing of the security agreement, financing statements were also signed. Said financing statements were duly recorded with the Auglaize County Recorder's Office on October 12, 1989 along with the Secretary of State's Office on October 17, 1989.

24. The beginning checking account balance on September 29, 1989 was $60,355.47. The funds from the October loan were credited to the account on October 10, 1989 and the ending balance on October 31, 1989 was $3,780.73.

Partial Stipulation of Facts (September 12, 1991).

The parties further stipulated that: this matter is ripe for summary judgment as no factual disputes; [the bank] withdraws the subordination issue; [the bank's] dispute as to Millers' security interest is premised upon the lack of an execution date on the security agreement; that no dispute exists that the entity signing the security agreement with the bank is the Debtor; [and pertinent balances]:

| | | |
|---|---|---|
| 3/6/90 | loan balance—begin | $243,942.16 |
| 3/6/90 | offset | 87,168.37 |
| 3/6/90 | loan balance—end | 156,773.79 |
| 3/7/90 | loan balance—begin | 156,862.90 |
| 3/7/90 | offset | 10,580.43 |
| 3/7/90 | loan balance—end | 146,282.47 |
| 90 days prior to petition | | 267,669.14 |

Stipulation (April 30, 1992).

Plaintiff trustee contends that the bank improved its position within 90 days prior to Debtor's petition pursuant to 11 U.S.C. § 553. That is, the trustee argues that because Debtor's account reflected a balance of $46,871.19, 90 days prepetition and because the bank setoff its claim by $97,748.80, the bank has improved its position by $50,877.61.

Plaintiffs the Millers request judgment in the amount of $97,748.80, representing the amount setoff by the bank, claiming that they hold a prior perfected security interest, entitling them to the funds Debtor deposited in the account with the bank.

The bank requests summary judgment stating that judgments on the two promissory notes in issue were rendered in the amounts of $167,376.03 and $76,487.22 by a state court on March 6, 1990. In an attempt to satisfy these amounts, the bank, on March 6 and 7, 1990, setoff amounts against Debtor's account with the bank. Additionally, the bank alleges that the security agreement executed by the Millers and Debtor contains no date; thus, there was no attachment of the Millers' interest in the collateral pledged thereunder. Because the parties did not have an effective security agreement, there can be no attachment; because there was no attachment, there can be no perfection. The bank also argues that its relationship to Debtor was that of a Debtor-creditor as a result of the general deposits made by Debtor to the bank and claims a right of setoff pursuant to O.R.C. § 1309.25(D). Finally, the bank

states that it was a secured creditor, thus, plaintiffs' argument of "improvement in position" is inapplicable.

## DISCUSSION

*The Millers' Motion for Summary Judgment*

■ The court will first consider the Millers' motion as a successful determination of the issues asserted by the Millers could moot the subsequent motions. The bank argues that the Miller's interest did not attach as the security agreement between Debtor and the Millers is undated. Although the agreement lacks an execution date, this deficiency is not fatal to attachment. That is, the

> primary function of a security agreement is that of a statute of frauds; it is designed mainly to minimize disputes between the Debtor and the secured party over whether there was an agreement and over what collateral it could have covered.

*Bank of Fulton Cty. v. Haupricht Bros.,* 55 Ohio App.3d 249, 255, 564 N.E.2d 101 (1988) (citation omitted).

The security agreement executed by Debtor and the Millers, despite the lack of a date, is valid, creating a security interest as it evidences the parties' intent to create a security interest in certain collateral of Debtor. *See Silver Creek Supply v. Powell,* 36 Ohio App.3d 140, 521 N.E.2d 828, 832 (1987) (no special form of words is required to give rise to a security interest; it is necessary that an intent to grant or to create a security interest be manifested by the parties in the written security agreement (citation omitted)).

Additionally, the agreement references the promissory note of August 28, 1986, which it seeks to secure. Trustee's and Secured Creditors, Robert and Henrietta Miller's Motion for Summary Judgment, Exhibit I at 1. Finally, financing statements reflecting dual filings of August 28, 1986 and August 29, 1986, have been submitted for the court's consideration. Partial Stipulation of Facts, Exhibits I and J. Reviewing all the documents, it appears that "a sufficient written foundation has been established for the creation of a security interest." *Silver Creek,* 521 N.E.2d at 832. *See also Miami Valley Prod. Credit v. Kimley,* 42 Ohio App.3d 128, 536 N.E.2d 1182 (1987) (it is appropriate to read a financing statement into a security agreement to obviate a deficiency where it appears that the parties intended to extend a security interest in collateral).

■ Notwithstanding the above analysis, the court must next consider the bank's right to setoff. The Millers request judgment in the amount setoff by the bank. Section 553 of title 11, governing setoff, provides in pertinent part:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the Debtor that arose before the commencement of the case under this title against a claim of such creditor against the Debtor that arose before the commencement of the case, except to the extent that—

> \*    \*    \*    \*    \*    \*

> (b)(1) ... if a creditor offsets a mutual debt owing to the Debtor against a claim against the Debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

> (A) 90 days before the date of the filing of the petition; and

> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

> (2) In this subsection, "insufficiency" means amount if any, by which a claim against the Debtor exceeds a mutual debt owing to the Debtor by the holder of such claim.

This section, then, preserves setoff to the extent permitted by nonbankruptcy law. *See Boston and Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562, 565 (7th Cir. 1986) (setoff is a self help remedy that has

been preserved in a restricted form); *In re Madcat Two, Inc.*, 127 B.R. 206, 212 (Bkrtcy.E.D.Ark.1991) (§ 553 does not grant a right to setoff, rather it permits the right to continue to exist when it arises pursuant to nonbankruptcy law). Although a setoff may be validated under § 553(a), the amount that may be setoff may be limited under § 553(b). *Madcat Two, Inc.*, 127 B.R. at 212.

■ In Ohio, a right to setoff is determined by O.R.C. § 1309.25(D), which provides:

(D) In the event of insolvency proceedings instituted by or against a Debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

\* \* \* \* \* \*

(4) in all cash and deposit accounts of the Debtor in which proceeds have been commingled with other funds, but the perfected security interest under this division is:

(a) subject to any right of setoff.

Under this section,

a person is 'insolvent' who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law.

O.R.C. § 1301.01(W). Furthermore,

once cash proceeds are either commingled with other funds or deposited into a deposit account, they cease to be 'identifiable,' and the secured creditor's postpetition right to trace those funds ceases to exist. The secured creditor's sole right to recover proceeds is then governed by O.R.C. § 1309.25(D)(4), which sets forth a formula for determining the creditor's right to recovery from the bank account.

*Matter of Triple A Coal Co., Inc.*, 55 B.R. 806, 811 (Bkrtcy.S.D.Ohio 1985). Thus, even if the Millers have a perfected security interest, that interest extends only to identifiable proceeds which have not been commingled or commingled cash in a limited way. *See Cissell v. First Nat. Bank of Cincinnati*, 476 F.Supp. 474, 495 (S.D.Ohio 1979) (if funds are not identifiable due to commingling with other funds which were not proceeds of the creditor's interest, the creditor is limited to the amount recoverable under § 1309.25(D)(4)(b)).

■ Additionally, the bank, in order to execute a setoff pursuant to § 553 must prove:

1. a debt exists from the creditor to the Debtor and that debt arose prior to the commencement of the bankruptcy case;

2. the creditor has a claim against the Debtor which arose prior to the commencement of the bankruptcy case;

3. the debt and the claim are mutual obligations.

*In re Learn*, 95 B.R. 495, 496 (Bkrtcy. N.D.Ohio 1989) (quoting *Braniff Airways, Inc. v. Exxon Company, U.S.A.*, 814 F.2d 1030, 1035 (5th Cir.1987)). Finally,

[i]t is axiomatic that a banking institution and a depositor form a debtor-creditor relationship regarding those funds. The deposit of money in a financial institution creates an obligation on the part of the bank to repay the amount deposited. Thus, a debt existed from [the bank] to the Debtor by virtue of the demand account which the Debtor had opened at [the bank].

*Id.* at 496.

■ In the instant situation, the bank obtained a judgment against Debtor, as a result of its default under two promissory notes, on March 6, 1990. Response of Fifth Third Bank at 5. Debtor's petition was filed on March 9, 1990. Debtor owed the bank as a result of the loan and the subsequent judgments and the bank owed Debtor as a result of the funds on deposit. *See In re Ohio–Erie Corp.*, 22 B.R. 340, 342, 6 C.B.C.2d 1366, 9 B.C.D. 430 (Bkrtcy. N.D.Ohio 1982). The debts were between the same parties, standing in the same capacity. *Id.* Thus, the bank has established the elements necessary to execute a setoff as Debtor owed the bank, prepetition, as a result of the notes and subsequent judgments and the bank owed Debtor, prepetition, as a result of the deposit account maintained at the bank. These

obligations were held by Debtor and the bank in the same capacity. Furthermore, the bank setoff Debtor's deposit in an attempt to satisfy the judgments it obtained. The bank has established its right to setoff.

Lastly,

[i]f the creditor validly exercises the right of setoff prior to the Debtor's petition filing, such action is irreversible by the bankruptcy court subject only to the trustee's power to avoid any 'improvement in the creditor's position' within ninety days of the petition filing.

\* \* \* \* \* \*

In Ohio, the right of banks to setoff 'mature indebtedness' has long been recognized.

\* \* \* \* \* \*

Although cash deposits to bank accounts establish an automatic Debtor-creditor relationship, checking account deposits only place liability for the indebtedness on the bank when such deposits are actually paid to the bank. Until such checks are paid to a bank, the relationship between the bank and customers is agent-principal, rather than Debtor-creditor, and such 'indebtedness' may not provide the basis for setoff.

*Matter of Springfield Casket Co., Inc.*, 21 B.R. 223, 227, 228, 9 B.C.D. 473 (Bkrtcy. S.D.Ohio 1982) (citations omitted). *See also Cissell*, 476 F.Supp. at 495 (in a case involving a preferential transfer under the bankruptcy act, the court stated that a bank is on a different footing than other general creditors since even though the depositor was insolvent and knowledge of this fact could be charged against the bank at the time when the deposit was made, the bank is still entitled to apply the deposit on its claim so long as it was accepted in good faith, in the ordinary course of business).

■ In the instant situation, the bank exercised its right of setoff on March 6, 1990; Debtor's petition was filed on March 9, 1990. Thus, the bank's setoff of the funds in Debtor's account is not reversible, except to the extent the bank improved its position within 90 days of Debtor's petition.

■ The Millers argue that the funds in Debtor's deposit account represent proceeds from collateral pledged to the Millers. The Miller's Motion for Summary Judgment, Affidavit of Tom Eppley. However, the parties stipulated that the bank's loan proceeds were deposited into Debtor's account. *See supra* p. 153 ¶ 18 and p. 153 ¶ 21. Thus, it appears that there was commingling of funds in Debtor's account, precluding the Millers from claiming a right to said funds; furthermore, their right is subject to the bank's right to setoff. The Millers motion for summary judgment, requesting judgment in the amount setoff by the bank is not well taken.

*The Bank's Motion for Summary Judgment*

The bank also claims a perfected security interest in the proceeds represented by the funds deposited in Debtor's account with the bank. The bank's security interest is subject to a right of setoff, specifically, the bank's right to setoff. As discussed, *infra*, the bank is entitled to setoff; the trustee is entitled to recover the amount representing an improvement in position.

*Trustee's Motion for Summary Judgment*

The court notes that, initially, the trustee asserted that the bank's financing statements fail to give sufficient notice of the Debtor's name under the security arrangement. However, this argument, as evidenced by the parties' April 30, 1992 stipulation, has been withdrawn. *See supra* p. 153 (no dispute exists that the entity signing the security agreement with the bank is the Debtor).

The trustee may recover from the bank an amount representing an "improvement in position." *See Springfield Casket Co., supra* p. 156. *See also Madcat Two*, 127 B.R. at 212 (§ 553 limits the right to setoff to the balance of the account as it stood at the beginning of the 90 day period prepetition); *In re Union Cartage Co.*, 38 B.R. 134, 137 (Bkrtcy.N.D.Ohio 1984) (improvement in position test merely calculates the difference between the amount owed the bank and the balance in the Debtor's account on the date ninety days before the

date the petition was filed). To calculate the insufficiency under this section, and the amount to which the trustee is entitled, the court must first ascertain:

> [t]he amount by which [the bank's] claim exceeded the amount Debtor had on deposit with [the bank] on the date of setoff.... Then, the amount by which [the bank's] claim exceeded the amount Debtor had on deposit on the 90th day prior to the filing of the petition, or if no insufficiency existed on that date, on the first day prior to the filing of the petition, within the 90–day period on which there was an insufficiency, must be determined. To the extent that the second figure is greater than the first, [the trustee] may recover said amount.

*Ohio-Erie Corp.*, 22 B.R. at 342–43.

■ The bank setoff the debt due it from Debtor on March 6 and March 7. The court will, in calculating the improvement in position, use the figures for March 7 as this calculation reflects the effect of both setoffs. *Matter of Dutton*, 15 B.R. 318, 320 n. 1, 4 C.B.C.2d 319 (Bkrtcy.D.N.J. 1981). The balance on March 7, 1990, was $10,580.43. Affidavit of Connie Swank filed by the bank (April 8, 1991). The bank's loan balance on March 7, 1990, was $156,862.90. Stipulation, *supra* p. 153. Thus, the bank's claim exceeded the amount on deposit, on March 7, 1990, by $146,282.47 ($156,862.90 − $10,580.43 = $146,282.47).

The parties agree that the amount on deposit on the 90th day preceding Debtor's petition was $46,871.19. *See supra* p. 152 ¶ 5. The parties also stipulated that the loan balance 90 days prior to the petition was $267,669.14. *See supra* p. 153. Thus, the bank's claim exceeded the amount Debtor had on deposit on the 90th day prior to Debtor's petition by $220,797.95 ($267,669.14 − $46,871.19 = $220,797.95). The trustee may, then, recover the amount by which the second figure, $220,797.95 exceeds the first, $146,282.47, or $74,515.48 ($220,797.95 − $146,282.47 = $74,515.48).

■ The bank disputes that it received $97,748.80, as a result of certain returned checks. *See* The Bank's Motion for Summary Judgment, Affidavit of Kermit E. Gladfelter. However, the court is not persuaded by the bank's argument as the returned deposits represent postpetition transactions. *See* Affidavit of Kermit E. Gladfelter filed by the Bank at 2 (April 8, 1991). The court finds, then, that the bank improved its position by $74,515.48. In light of the foregoing, it is therefore

ORDERED that the trustee be, and hereby is, granted judgment in the amount of $74,515.48 against defendant the Fifth Third Bank of Western Ohio, National Association. It is further

ORDERED that the counterclaim of Robert Miller and Henrietta Miller against the Fifth Third Bank of Western Ohio, National Association, to recover proceeds be, and hereby is, dismissed.