MIAMI VALLEY PRODUCTION CREDIT ASSOCIATION, N.K.A. FARM CREDIT SERVICES, APPELLEE, *v.* KIMLEY ET AL., APPELLEES; CALDWELL, APPELLANT.

(No. CA 2369—Decided October 15, 1987.)

*John R. Butz,* for appellee Miami Valley Production Credit Association.

*Robert L. Borley,* for appellee Clark Landmark, Inc.

*Austin P. Wildman,* for appellee Mrs. A. A. Wildman.

*Ronald C. Tompkins,* for appellant Louis Caldwell.

WOLFF, J. On May 11, 1985, the defendant John W. Kimley (hereinafter "Kimley" or "debtor") signed a $15,000 cognovit note in favor of the defendant-appellant Louis Caldwell. On the same date, Kimley and Caldwell executed a standard security agreement to secure the $15,000 obligation. The description of the collateral contained in the security agreement is as follows:

"300 acres ·of soybeans and 24 acres of wheat for 1985 crop season on land farmed by John W. Kimley in several locations in Clark and Greene County, also includes any other crops and the resulting monetary proceeds from sale or crop transfers to others, if payment is not made by July 11, 1985, as contained in a cognovit note dated May 11, 1985."

On May 13, 1985, at 10:38 a.m., Caldwell filed a .standard financing statement signed by the debtor, Kimley, in favor of Caldwell. This financing statement was filed in the Clark County Recorder's office and given number 15043. This document did not contain a recitation that it was to be filed for record in the real estate records. Indeed, there was a handwritten statement beneath the collateral description: "not to be filed in Real Estate John Kimley."

The description of the collateral contained in the May 13, 1985 financing statement is as follows:

"300 acres of soybeans and 24 acres of wheat for 1985 crop season farmed by John W. Kimley in several locations in Clark and Greene Countys [*sic*]."

The financing statement also pro-

vided: "Proceeds of Collateral are also covered" and "Products of Collateral are also covered." In late 1985, the debtor's crops were harvested and sold. A portion of the proceeds was placed in an escrow account at Security National Bank and Trust Company.

On June 17, 1986, another standard financing statement was filed by Louis Caldwell at the Clark County Recorder's office. This document was signed by both Kimley and Caldwell, and contained the following language:

"Amend Financing Statement #15043

"files [*sic*] 5-13-85 @ 10:38 AM to list the following properties in Real Estate Records of Clark County, Ohio: See ATTACHED LIST."

The attached list consisted of the descriptions of four parcels of land situated in Clark County, consisting of the names of the record owners, sizes of the parcels, locations by road and township, and deed references.

On December 11, 1986, Miami Valley Production Credit Association ("MVPCA") took a cognovit judgment against Kimley in the Clark County Court of Common Pleas. MVPCA subsequently attempted to levy on the funds that had been placed in the escrow account at Security National Bank and Trust Company. Caldwell and other creditors claimed to have liens on the funds. By an agreed order of March 25, 1987, all parties agreed to submit to the trial court the question of whether Caldwell had a "valid lien" on the escrowed fund.

On April 21, 1987, the court filed its decision, finding that Caldwell did not have a lien on the funds. A judgment entry to this effect was filed on May 6, 1987.

Caldwell has appealed, asserting the following assignment of error:

"The trial court erred in holding that appellant's amended financing statement in conjunction with the original filing does not create a lien upon the proceeds of crops for which appellant provided seed and herbicide."

In its decision, the trial court indicated that the first financing statement was ineffective "for the reasons stated in the memoranda." These reasons were the noncompliance of the first financing statement with R.C. 1309.39(E), which states:

"*A financing statement covering crops growing or to be grown or timber to be cut or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or a financing statement filed as a fixture filing pursuant to section 1309.32 of the Revised Code must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records of the county in which the real estate is situated, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee.*" (Emphasis added.)

Caldwell now concedes that the first financing statement was inadequate.

The court went on to hold that the second financing statement was ineffective because it was untimely, in that the crops in question had been harvested prior to the filing of the second financing statement.

We reverse.

While the parties and the trial court framed the issue in terms of whether Caldwell had a "valid lien" on the escrowed proceeds, it is clear that the issue was whether Caldwell had a perfected security interest in the proceeds.

We conclude that Caldwell had a perfected security interest as of June 17, 1986, at 10:22 a.m.

There is nothing in the record suggesting the parties or the trial court questioned the effectiveness of the security agreement executed by Caldwell and Kimley on May 11, 1985.

An effective security agreement is, however, essential to the perfection of a security interest. Perfection cannot occur absent attachment. See R.C. 1309.22(A). Attachment cannot occur absent an effective security agreement. See R.C. 1309.14, which provides in part:

"(A) Subject to the provisions of section 1304.14 of the Revised Code on the security interest of a collecting bank, section 1308.36 of the Revised Code on security interests in securities, and section 1309.11 of the Revised Code on a security interest arising under sections 1302.01 to 1302.98 of the Revised Code, *a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:*

"(1) The collateral is in the possession of the secured party pursuant to agreement, or *the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;* and

"(2) Value has been given; and

"(3) The debtor has rights in the collateral.

"(B) *A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in division (A) of this section have taken place* unless explicit agreement postpones the time of attaching." (Emphasis added.)

If we were to view the security agreement in isolation from the financing statements, we would find it deficient for want of an adequate description of the real estate upon which the crops were to be grown. See R.C. 1309.08 and its Official Comment.

However, there is persuasive authority for reading a financing statement into the security agreement to obviate such a deficiency. See *In re Bollinger Corp.* (C.A. 3, 1980), 614 F. 2d 924; *In re Numeric Corp.* (C.A. 1, 1973), 485 F. 2d 1328; *In re Carmichael Enterprises, Inc.* (N.D. Ga. 1971), 334 F. Supp. 94; *In re Center Auto Parts* (C.D. Cal. 1968), 6 UCC Rep. Serv. 398; *In re Smith* (Bankr. Ct. N.D. Ohio 1985), 47 Bankr. Rptr. 482; *In re Hite* (Bankr. Ct. N.D. Ohio 1980), 4 Bankr. Rptr. 547. To do so is particularly appropriate in the circumstances of this case, where the debtor Kimley, at all times, appears to have intended that Caldwell have a security interest in the crop and its proceeds, as evidenced by his signatures upon the May 11, 1985 security agreement and both financing statements.

In this case, we conclude that the two financing statements — the June 17, 1986 statement containing a sufficient description of the land — can be properly read into the May 11, 1985 security agreement to render it effective for attachment purposes, as of June 17, 1986.

The issue addressed by the trial court was whether the June 17, 1986 financing statement perfected a security interest in what, as of June 17, 1986, was a deposit of money in an escrow account.

The trial court determined that the second financing statement was untimely and, therefore, incapable of perfecting the security interest, because "the crops * * * had been harvested prior to the filing." Presumably, the trial court was impressed with the argument of Clark Landmark, Inc., that the second financing statement, which

contained only the above-described language, failed to describe the collateral as it existed on June 17, 1986, *i.e.*, as escrowed proceeds.

R.C. 1309.39(A) provides in part:

"A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral * * *."

The June 17, 1986 financing statement, standing alone, was not only untimely, it was also deficient in that it contained no description whatsoever of the collateral — only a description of the real estate parcels.

However, the June 17, 1986 financing statement did refer to the first financing statement by number, and date and time of filing.

Nothing of record suggests the first statement could not be located from the information contained in the second. The first statement would have alerted anyone that Caldwell had a security interest in the proceeds of the 1985 crop grown by Kimley on the parcels particularly described in the second statement. The two statements were, indeed, the functional equivalent of a single financing statement.

In our opinion, Caldwell succeeded in giving the public notice contemplated by R.C. 1309.39(A) and (E) as of June 17, 1986, at 10:22 a.m., and had, therefore, a perfected security interest as of that date and time. R.C. 1309.22 (A).

The trial court apparently did not rely on Clark Landmark's arguments that the second financing statement was fatally defective for lack of a recitation "that it is to be filed for record in the real estate records" [R.C. 1309.39(E)], and that an amendment under R.C. 1309.39(D) presupposes a pre-existing "financing statement which has been perfected as a lien." Clark Landmark reiterates these arguments on appeal, rephrasing the latter argument somewhat more artfully: "[R.C. 1309.39(D)] presupposes that to be an amendment to a financing statement, there is a valid financing statement to be amended."

R.C. 1309.39(H) provides:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In the absence of any evidence that anyone was misled by the absence of the prescribed recitation, we reject the first argument. We need not agree or disagree with what we perceive to be the proposition advanced in Clark Landmark's second argument, because it is inapplicable to the situation here. We do not view the second financing statement as amending an earlier financing statement that was itself sufficient to accomplish perfection at the time it was filed. Rather, we view the second financing statement as supplying the required information missing from the first financing statement and, together with the first financing statement, accomplishing perfection for the first time on June 17, 1986.

Although we reverse the determination of the trial court that Caldwell had no perfected security interest, we hasten to observe that Caldwell's efforts to create and perfect a security interest in Kimley's 1985 crop are a poor example, indeed, for others similarly situated. None of the three documents fully complied with the straightforward, uncomplicated provisions of R.C. 1309.14 and 1309.39. We are willing to treat the two financing statements as a single financing statement and read that "single" statement into the otherwise

deficient security agreement for two reasons. First, to do so comports with the obvious intent of Kimley and Caldwell. Second, no injustice is done to lien creditors like MVPCA or to other secured creditors. We have concluded that Caldwell only perfected his security interest as of June 17, 1986, at 10:22 a.m. Secured creditors who perfected prior to this date and time, and judgment creditors who became lien creditors prior to this date and time, enjoy priority over Caldwell. See R.C. 1309.31 and 1309.20. Secured creditors or judgment creditors who did not, respectively, perfect or become lien creditors prior to June 17, 1986, should enjoy no greater rights than those afforded by these sections.

The judgment determining that Louis Caldwell does not have a perfected security interest in the escrowed funds will be reversed. The matter will be remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

KERNS, P.J., and BROGAN, J., concur.