In re **COMMERCIAL MILLWRIGHT SERVICE CORP., Debtor.**

**United States of America, Plaintiff,**

v.

**Lincoln Savings Bank and Habbo Fokkena, Trustee, Defendants.**

**Habbo G. Fokkena, Chapter 7 Trustee, Counter–Claimant and Cross–Claimant,**

v.

**United States of America and Lincoln Savings Bank, Counter–Defendants and Cross–Defendants.**

**Bankruptcy No. 96–60007–W.**
**Adversary No. 96–6068–W.**

United States Bankruptcy Court, N.D. Iowa.

March 22, 1999.

Martin McLaughlin, Assistant U.S. Attorney, Cedar Rapids, IA, for United States of America on behalf of IRS.

Habbo Fokkena, Clarksville, IA, Chapter 7 Trustee.

Carroll Reasoner, Cedar Rapids, IA, for Lincoln Savings Bank.

## ORDER ON REMAND

PAUL J. KILBURG, Chief Judge.

Hearing was held on February 12, 1999 to consider issues on remand from the U.S. District Court. The parties advised the Court they would submit an additional stipulation to address issues raised in the U.S. District Court's Order of remand. Lincoln Savings Bank filed the Stipulation on February 25, 1999. This Court concludes that the Stipulation is sufficient to allow a resolution of the issues submitted on remand. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

### STATEMENT OF THE CASE

On February 23, 1998, this Court entered an *"Order Re Trustee's Motion to Adjudicate Law Points."* This ruling resolved the following legal issues:

A. Does Lincoln Savings Bank have a perfected lien in newly acquired property of Debtor?

B. What is the lien status of the IRS?

This Court ruled as follows:

**WHEREFORE,** Trustee's Motion to Adjudicate Law Points, which the Court treats as a Motion for Partial Summary Judgment, is GRANTED.

**FURTHER,** the lien of the IRS, arising from the confirmed plan in Debtor's first Chapter 11 case, was perfected in August and December 1989. It remains a perfected secured interest in this case, attaching to all property of Debtor including property acquired postconfirmation. This secured interest has priority over any secured interest claimed by the Bank.

**FURTHER,** the Bank's senior secured interest in after-acquired property terminated with Debtor's first Chapter 11 case.

**FURTHER,** the Bank's senior secured interest retained in the confirmed plan terminated upon payment in full.

**FURTHER,** neither the April 1989 financing statement nor the March 1994 continuation statement perfects a secured interest of the Bank in property acquired by Debtor postconfirmation.

**FURTHER,** the Court declines to rule on whether the April 1989 financing statement and the March 1994 continuation statement in combination perfect the Bank's postconfirmation secured interest. However, if such perfection is proved, priority of such interest does not relate back to the time the Bank filed its April 1989 financing statement.

Lincoln Savings Bank appealed the Order. On November 24, 1998, the U.S. District Court ordered "that this case is remanded to the Bankruptcy Court for the purposes of determining the effect, if any, of the continuation statement included in the record at DR–101." Lincoln Savings Bank admits that the continuation statement provided in the record on appeal at DR–101 was included by mistake. Its Stipulation filed February 25, 1999 attaches the correct continuation statement at Exhibit S–1. The issue for resolution is whether that continuation statement, combined with the original, April 1989 financing statement, perfects the Bank's postconfirmation security interest.

It is necessary to recap the history of the case to put this ruling in perspective. Debtor granted Lincoln Savings Bank a security interest which was perfected by the filing of a UCC–1 financing statement in April 1989. In December 1989, Debtor filed a Chapter 11 petition which resulted in a plan of reorganization being confirmed

July 30, 1991. The plan treated the Bank's claim and provided that the Bank's lien remained valid until the claim was paid in full. Sometime after confirmation Debtor paid that claim in full.

Postconfirmation, Debtor borrowed new money from the Bank and signed security agreements ratifying the original 1989 security agreement. The Bank did not file a new UCC–1 financing statement to perfect its postconfirmation security interest. Instead, the Bank relied on the April 1989 financing statement. The Bank filed a continuation statement on March 25, 1994. *See* Exhibit S–1. This continuation statement refers to the original financing statement filed April 17, 1989. It does not contain Debtor's signature or a description of the collateral.

The ruling of February 23, 1998 held that the Bank's postconfirmation security interest was not perfected by the April 1989 financing statement. This result is based on the effect of § 552(a), which cuts off prepetition floating liens, and § 1141(a), which binds the parties to the provisions of the confirmed plan. The ruling concluded that § 552(a) cut off the Bank's floating lien covering after-acquired property and future advances, and the confirmed plan failed to revive or retain that lien. When Debtor paid off the Bank's secured claim postconfirmation, its lien was extinguished and the April 1989 financing statement's effectiveness was terminated, even though no termination statement was filed of record. Thus, the 1989 financing statement became a nullity and was ineffective to perfect the Bank's postconfirmation security interest. Further, the unsigned continuation statement filed in March 1994 was insufficient by itself to constitute a valid financing statement.

As a consequence of the effect of § 552(a) and Debtor's confirmed plan, the Bank was required to file a new financing statement to perfect its security interest arising from postconfirmation advances. Neither the April 1989 financing statement nor the March 1994 continuation statement, by themselves, were sufficient to perfect the Bank's security interest. The Court did not have the March 1994 continuation statement when it filed its ruling on February 23, 1998. The sole issue for determination is whether the 1994 continuation statement in combination with the 1989 financing statement operate to perfect the Bank's postconfirmation security interest.

## CREATION OF SECURITY INTEREST

■ As a threshold matter, the Court must address the validity of the Bank's postconfirmation security interest. The law of Iowa governs the rights of creditors in property of the estate. *In re McLaughlin Farms, Inc.,* 120 B.R. 493, 503 (Bankr. N.D.Iowa 1990). A security interest is created by a security agreement. Iowa Code § 554.9105(1). The basics of a security agreement are (1) a writing manifesting an intent to create or provide for a security interest, (2) signed by the debtor, and (3) containing a description of the collateral. *F.S. Credit Corp. v. Shear Elevator, Inc.,* 377 N.W.2d 227, 231 (Iowa 1985). The Bank included in its Response to the motion to adjudicate law points, at Exhibit 7, an example of one of the notes Debtor executed in favor of the Bank postconfirmation. This note states it is secured by "Security Agreement Dated 04/10/89 and Direct Acct. Receivable Assign." The 4/10/89 Security Agreement, attached as Exhibit 1, contains a description of collateral. Both Exhibits contain Debtor's signature. These documents create a valid postconfirmation security interest.

## PERFECTION OF SECURITY INTEREST

■ In the Stipulation filed February 25, 1999, the Bank argues that both parties intended the postconfirmation advances be secured by the April 1989 Security Agreement and the Assignment of Accounts. The intent of the parties is relevant in

determining the validity of a security agreement. *See In re Waters,* 90 B.R. 946, 957 (Bankr.N.D.Iowa 1988). Stressing intent in the context of the question of whether a security interest was perfected, however, confuses the requirements for *creating* a security interest with the requirements for *perfecting* a security interest. Perfection of a security interest is governed by the mandates of the UCC, not the intent of the parties.

■ Most security interests in Iowa are perfected by filing a financing statement. Iowa Code § 554.9302. A financing statement is legally sufficient if it contains the names and mailing addresses of the debtor and secured party and a description of collateral, and is signed by the debtor. *Merchants Nat'l Bank v. Halberstadt,* 425 N.W.2d 429, 432 (Iowa App.1988); Iowa Code § 554.9402(1). The validity of a financing statement depends primarily on its ability to give notice of the security interest to other creditors. *In re Rieber,* 740 F.2d 10, 12 (8th Cir.1984) (applying Iowa law). If a document, filed with the appropriate' authorities, satisfies all requirements of a valid financing statement and gives notice of a security interest, a perfected security interest is created. *Id.*

A fundamental question which must be resolved in this case is whether the Bank's postconfirmation continuation statement can revive its prepetition financing statement which terminated by virtue of the operation of § 552(a) and the provisions of Debtor's confirmed Chapter 11 plan. There appears to be no authority directly on point. There is authority for the proposition that two individually insufficient filings of various types can be construed together to satisfy the requirements of a financing statement. *In re APF Indus., Inc.,* 112 B.R. 446, 448 (Bankr.M.D.Fla. 1990); *In re Waldick Aero–Space Devices, Inc.,* 71 B.R. 932, 937 (D.N.J.1987); *Miami Valley Production Credit Ass'n v. Kimley,* 42 Ohio App.3d 128, 536 N.E.2d 1182, 1185 (1987); *In re Heger,* 133 B.R. 612, 616 (Bankr.S.D.Ohio 1991). However, there is also authority that after a financing statement has lapsed for failure to file a continuation statement within five years, nothing remained to be continued and a subsequently filed continuation statement was, therefore, ineffective. *In re Ellingson Motors, Inc.,* 139 B.R. 919, 924 (Bankr. D.Neb.1991).

■ The issue is ultimately one of State law, though admittedly there is a unique bankruptcy overlay associated with this issue. While acknowledging the philosophy of liberal construction of the Uniform Commercial Code under Iowa Code § 554.1102(1), the Iowa Supreme Court nevertheless holds that it is unwise to approve inattention to the plain mandates of the Code. *C & H Farm Serv. Co. v. Farmers Savs. Bank,* 449 N.W.2d 866, 870 n. 2 (Iowa 1989). In so doing, the Iowa Supreme Court requires strict application of the plain mandate of the Code's requirements for security agreements. *Id.* Likewise, the requirements of § 554.9402 relating to the filing of financing statements are strictly applied in Iowa. *See Rieber,* 740 F.2d at 12 (recognizing strict filing requirements of the UCC).

■ While it is true that a combination of two filings arguably gives a subsequent lender inquiry notice of a security interest, notice is deemed inadequate if it is seriously misleading. Inquiry notice is the cornerstone of the UCC requirements for perfection of a security interest. *See* Iowa Code § 554.9402, U.C.C. cmt 2. While a financing statement substantially complying with UCC requirements may be effective even though it contains minor errors which are not seriously misleading, it is held to be ineffective if it is determined to be seriously misleading. Iowa Code § 554.9402(8). If a debtor changes its name, identity or corporate structure, it is no longer effective to perfect a security interest in after-acquired property unless a new filing is made within four months after the change. Iowa Code § 554.9402(7). The U.C.C. comment to that section states:

Not all cases can be imagined and covered by statutes in advance; however, the principle sought to be achieved by

the subsection is that after a change which would be seriously misleading, the old financing statement is not effective as to new collateral acquired more than four months after the change, unless a new appropriate financing statement is filed before the expiration of the four months. The old financing statement, if legally still valid under the circumstances, would continue to protect collateral acquired before the change and, if still operative under the particular circumstances, would also protect collateral acquired within the four months.

*Id.* cmt 7.

Section 554.9402(7) has been applied to require filing of a new financing statement to perfect a security interest in after-acquired property where a sole proprietor incorporated in *Citizens Savings Bank. v. Sac City State Bank,* 315 N.W.2d 20, 27 (Iowa 1982). Likewise, a bankruptcy court applied Illinois' version of U.C.C. 9–402(7) to require a new financing statement after a corporate merger. *In re Meyer–Midway,* 65 B.R. 437, 443 (Bankr.N.D.Ill.1986); *see also Bank of the West v. Commercial Credit Financial Servs., Inc.,* 852 F.2d 1162, 1170 (9th Cir.1988) (finding transfer of collateral to wholly owned subsidiary constituted a change of structure in the debtor entity requiring new financing statement).

▮ The Court is not aware of any cases which consider whether filing a Chapter 11 case or confirming a Chapter 11 plan of reorganization constitutes a change in identity or corporate structure which could trigger § 554.9402(7)'s requirement of filing a new financing statement. Such change is inherent, however, in the provisions of Chapter 11 which "reorganizes" the debtor. A Chapter 11 debtor has been viewed as a "different entity" for certain purposes as it passes through the Chapter 11 process. *See e.g., United States v. Gerth,* 991 F.2d 1428, 1435 (8th Cir.1993). The debtor's business may show little change, outwardly, after confirmation of a plan of reorganization. "However, the legal mechanisms which shift the business out from under the auspices of the bankruptcy court substantially affect the rights and remedies of the debtor and creditors." 3 Epstein, Nickles, White *Bankruptcy* § 10–29. Confirmation of a plan revests property in the debtor, releasing the property from creditors' claims and interests, and gives creditors new claims under the plan's terms. *See* 11 U.S.C. § 1141.

Under the peculiar facts of this case, this Court concludes that confirmation of Debtor's Chapter 11 plan constitutes a change in Debtor's identity or structure under Iowa Code § 554.9402(7). Because of this change, the Bank's UCC filings were seriously misleading. The Bank's continuation statement, filed almost five years after the financing statement, references the April 1989 financing statement, which had terminated because of Debtor's intervening Chapter 11 bankruptcy case. Perfection is intended to protect outside parties by providing clear notice. The series of filings involved here must be determined to create confusion as the UCC records contradict the reality of the effect of Debtor's confirmed Chapter 11 plan. The continuation statement gives the impression that the Bank's floating lien remained perfected after April 1989, including the time during which Debtor's Chapter 11 case was pending and postconfirmation. This is a false impression. A lien search would inaccurately indicate that all Debtor's property acquired after April 1989 was collateral for the Bank's ongoing lending. As discussed in the Court's February 23, 1998 Order, the Bank's floating lien in after-acquired property terminated pursuant to § 552(a) in December 1989 when Debtor filed its first Chapter 11 petition.

The Bank is a commercial lender and obviously experienced in protecting its interests through secured transactions. It failed to preserve its prepetition floating lien during Debtor's original Chapter 11 case by requesting a rollover lien. Absent a rollover lien, when the Bank entered into new lending transactions with the "reorganized" Debtor postconfirmation, it could

have protected itself by filing a new financing statement. After confirmation, the prepetition perfection of the Bank's floating lien was ineffective to protect the Bank's subsequent, postconfirmation lending. A new financing statement was necessary to perfect the Bank's new, postconfirmation security interest in property of the reorganized Debtor. The Bank failed to file a new financing statement. The March 1994 continuation statement combined with the April 1989 financing may not have been misleading to the parties involved. However, for those individuals for whom such notice is intended, these documents were seriously misleading and therefore ineffective to perfect the Bank's postconfirmation security interest.

**WHEREFORE,** Lincoln Savings Bank's 1994 continuation statement in combination with the 1989 financing statement fail to perfect the Bank's postconfirmation security interest.