In re Michael L. STANTON and Joelle S. Stanton, f/k/a Joelle S. Buczkowski, Debtors.

ROCHESTER COMMUNITY SAVINGS BANK, Plaintiff,

v.

Michael L. & Joelle S. STANTON, Defendants.

Bankruptcy Nos. 94–13451 B, 95–1075 B.

United States Bankruptcy Court, W.D. New York.

March 12, 1996.

Harris Beach & Wilcox (David L. Rasmussen, of counsel), Rochester, New York, for Plaintiff.

Joseph M. Augustine, Buffalo, New York, for Defendants.

CARL L. BUCKI, Bankruptcy Judge.

Countless checks are issued to joint payees every day. In many instances, these checks represent an easy device to assure the application of payment to a proper account or for a desired purpose. The issue in the case at bar is whether money is procured through actual fraud when a debtor circumvents the intention and design of a lender who has issued an instrument to joint payees.

Michael Stanton ("Stanton") filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 19, 1994. Among his scheduled creditors was Rochester Community Savings Bank, which had loaned the sum of $10,000 to finance the debtor's purchase of a 1973 Corvette from Nicholas J. Liolos ("Liolos"). Prior to his receipt of funds in November of 1992, Stanton delivered to the Bank a photocopy of the seller's certificate of title. Using the information on this document, the bank prepared an Installment Loan Note and Security Agreement, as well as the Notice of Lien that it needed to perfect the Bank's interest in the automobile. Stanton then executed both documents. Expecting that he would promptly complete the purchase, the Bank mailed the Notice of Lien to the New York State Department of Motor Vehicles. To assure the transfer of title to its borrower, Rochester Community Savings Bank issued a joint check payable to both Stanton and Liolos for the amount of the net proceeds.

Following his receipt of the joint check, Michael Stanton did meet with Liolos. On that occasion, however, Stanton discovered a mechanical problem with the vehicle and refused to accept title. Rather than cancel the transaction and loan, Stanton and Liolos agreed to postpone the sale until Liolos could perform necessary repairs. Meanwhile, Stanton was to deposit the loan proceeds into an account from which he could later withdraw the balance due on the purchase price. Without advising the bank of these new arrangements, both payees indorsed the joint check. Unfortunately, Liolos never completed repairs to the satisfaction of Stanton, and the sale was never consummated. Although Stanton made regular payments of principle and interest to the Bank for eight months, he eventually began to invade the funds that he had deposited with the acquiescence of Liolos. By the time of the bankruptcy filing, the account was completely dissipated. Meanwhile, because Stanton never acquired title to the Corvette, there existed no asset against which the bank's interest could attach. As a consequence, Rochester Community Savings Bank now holds a claim that is fully unsecured.

Rochester Community Savings Bank commenced this adversary proceeding to determine the dischargeability of its claim under 11 U.S.C. § 523(a)(2)(A). The Bank asserts that Stanton obtained credit through a fraudulent representation regarding his ownership of the collateral. Stanton responds that he lacked any fraudulent intent and that all of his representations were accurate at the time that he obtained credit. As to the issue of intent, Stanton testified that he fully expected to complete the purchase and that these plans did not change until long after he had closed the loan. In his view, the loan documents represented only an expectation of ownership. He argues that the failure to fulfill this expectation cannot negate the accuracy of its existence at the time that he made the representation.

 Section 523(a)(2)(A) of the Bankruptcy Code provides that the order of discharge in Chapter 7 will not discharge an individual from a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." As the Supreme Court recently observed in *Field v. Mans*, 516 U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the application of this section requires a creditor's justifiable reliance upon such pretenses, representation or fraudulent act.

The essence of any loan is the disbursement of money from lender to borrower. No lending transaction is complete until that event has occurred. In the present instance, Rochester Community Savings Bank issued a check which was jointly payable to both Stanton and Liolos. Pursuant to section 3–116 of the Uniform Commercial Code, the

check thereby became payable to both of them and could "be negotiated, discharged or enforced only by all of them." Until both payees had endorsed the check, Stanton had no access to the proceeds which that instrument embodied. Fundamentally, the bank designed the transaction to encompass the check's delivery to Liolos. Through this technique, it preserved the various representations of the borrower through the point of final disbursement, that is, the point at which both Stanton and Liolos were in receipt of the check.

Before receiving the proceeds check at the bank offices, Michael Stanton executed an Installment Loan Note and Security Agreement. In this instrument, he granted a security interest in "the goods or property being purchased," which were defined to include the 1973 Chevy Corvette. Stanton further agreed that he would "[k]eep the Collateral in good condition;" that he would "[i]mmediately tell [the Bank] in writing if the Collateral is lost, stolen, damaged or destroyed;" that he would "not remove the Collateral, or permit it to be removed, for more than 30 days at a time from the address at which it will be kept as shown in this Note;" and that he would "[n]ot sell, trade, lease, rent, give away, abandon or in any other way dispose of the Collateral." Implicit in these terms is the representation that he was purchasing the Corvette. The issuance of a joint check served not only to confirm this understanding, but to extend the transaction at least to a point at which that understanding could be fulfilled. It was not. Contrary to the representation that he would thereby provide collateral for the bank's advance of funds, Stanton chose to deposit the monies into his own account.

This Court accepts Stanton's position that he at all times intended to repay the indebtedness, and even that he intended eventually to acquire the Corvette. If good intentions could assure collection, creditors might resort to polygraphs rather than collateral. In the real world, circumstances change. Both the desire and ability to pay may diminish over a short span of time, perhaps even within moments of a transaction. To protect against these risks, a creditor may legiti-

mately bargain for a security interest in collateral. Because a lien will only attach to collateral whose title rests in the grantor, a lender must assure that its borrower has indeed assumed ownership. In the present instance, this assurance derived from issuance of a joint check. Having structured the transaction to include delivery of proceeds to the seller, Rochester Community Savings Bank justifiably relied upon Stanton's representation of his contemporaneous acquisition of the collateral. Before he even completed the transaction, Stanton negated this representation and thereby violated unilaterally his commitment to provide a security interest. By taking the loan proceeds without fulfilling this vital condition of his agreement, Stanton committed actual fraud.

At this time, the Court need not decide whether fraud would have occurred if the loan proceeds had been payable to Stanton alone. Arguably, the release of funds in that form would have marked the completion of a transaction at which the Bank accepted a promise of prospective delivery of a security interest. Such was not the circumstance in the instant case. The designation of joint payees served as a relatively unobtrusive means to assure the ultimate delivery of funds to the seller. Unwilling to accept a mere promise that a sale would occur, the bank chose to restrict access to loan proceeds. The condition for that access was fulfillment of Stanton's representation regarding use of proceeds for the contemporaneous acquisition of collateral. This representation continued throughout a closing process that was to include the delivery of the check to Liolos. Knowing that his actions would render his representation to be false, Stanton nonetheless chose to defer the intended application of proceeds. As a consequence, the bank received a mere possibility of some future security, rather than the actual lien to which the bank had clearly insisted when it issued the joint check.

■ Section 523(a)(2)(A) precludes the discharge of a debt for money "to the extent obtained" by a false representation or actual fraud. Here, Stanton's fraud enabled him to obtain unsecured credit that was intended to be secured. The denial of discharge extends,

therefore, only to the value of that which the Rochester Community Savings Bank was improperly denied, namely, a security interest. This value should be set as the net amount which the bank would have received upon a liquidation of its collateral. At trial, neither the bank nor Stanton presented evidence of this value. To the extent that the parties disagree about reliance on the "trade-in" book value of the vehicle, they should schedule argument on this issue. Alternatively, they should stipulate to a value, which will be deemed a nondischargeable obligation of Michael L. Stanton. The Clerk shall enter judgment in this amount after it is established.

The plaintiff's complaint also named Michael's wife, Joelle S. Stanton, as a defendant. The evidence indicates that she was not a party to any of the disputed transactions. Accordingly, as to her, the complaint is dismissed.

So ordered.