In re Henry George BANKE III, Pamela Sue Banke, Debtors.

Maynard Savings Bank, Plaintiff,

v.

Henry George Banke III, Pamela Sue Banke, Defendants.

Bankruptcy No. 01–01281W.
Adversary No. 01–9157W.

United States Bankruptcy Court, N.D. Iowa.

March 11, 2002.

Joseph A. Peiffer, Cedar Rapids, IA, for Henry George Banke, III and Pamela Sue Banke.

John W. Hofmeyer, III, Oelwein, IA, for Maynard Savings Bank.

## RULING

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned for trial on January 9, 2002. Debtors/Defendants Henry Banke III and Pamela Banke were represented by attorney Joseph Peiffer. Creditor/Plaintiff Maynard Savings Bank was represented by attorney John Hofmeyer III. After the presentation of evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (K).

## STATEMENT OF THE CASE

Debtors' Motion to Avoid Lien and the Bank's Complaint to Determine Dischargeability were combined for trial. Pursuant to § 522(f)(1)(B)(ii), Debtors seek to avoid the Bank's lien on Henry Banke's boat, motor and trailer as a non-purchase money, non-possessory security interest in tools of the trade. The Bank disputes whether the collateral constitutes tools of the trade.

The Bank's adversary complaint seeks exception from discharge under § 523(a)(2)(A) or (B). It argues Pamela Banke fraudulently entered into a loan pledging Henry Banke's boat, motor and trailer as collateral. The Bank asserts both Debtors are liable on the debt and the debt should be excepted from discharge for fraud or false financial statement. Debtors argue Henry Banke is not liable on the debt. They assert no fraudulent intent exists because Pamela Banke was unaware that Henry Banke was the sole owner of the property when she pledged it as collateral.

## FINDINGS OF FACT

Debtors filed their Chapter 7 petition on April 13, 2001. In their amended Schedule C filed June 8, 2001, Debtors claimed a boat, motor and trailer (collectively referred to hereafter as "the boat") exempt, to a value of $5,000, as tools of the trade under Iowa Code sec. 627.6(10). The Court ruled on October 4, 2001 that, in the absence of a timely objection, this property is exempt pursuant to § 522(*l*). The Bank had filed an untimely objection.

The boat is 16 years old. It was purchased new in 1986. Title and registration of the boat have, at all times, been solely in the name of Henry Banke. From 1986 through 1989, Henry Banke used the boat in operating a fishing guide and tackle sales business. Relevant tax returns for these years show net losses the first two years and small net gains for the second two years for the business. Thereafter, the business was discontinued until after Debtors filed their Chapter 7 petition. In 2001, Mr. Banke resumed his fishing guide business in late May or early June, after high waters receded. Between May and September 2001, the business produced $5,750 in gross income. The boat is essential to the business.

On March 24, 2000, Pamela Banke approached Plaintiff Maynard Savings Bank for a short-term loan. She received a $10,000 loan with a maturity date of October 15, 2000. Mrs. Banke pledged the boat as security for the loan. This was a business loan for Mrs. Banke to use in the business, "Top of the Line". Mrs. Banke signed all the loan documents. Mr. Banke did not sign any of these documents.

Debtors ran the "Top of the Line" business together. Mrs. Banke took care of the financial end of the business and also had a full-time job as a lending officer with Union Planters Bank. Mr. Banke received

a salary from Top of the Line and ran the day-to-day operations, managing a retail clothing store and making purchases for the business. Pamela Banke is listed as the owner of the business on all relevant documents. Henry Banke is listed as owner on the business letterhead and on the signature card for the business checking account. He sometimes identified himself as owner when doing business with manufacturers or wholesalers.

At the hearing, the Bank presented testimony of Dawn Voshell, a former employee of Top of the Line. She testified that Henry Banke interviewed and hired her and was her supervisor. She considered Pamela Banke the owner of the business. Mrs. Banke signed company checks and was listed as owner on W 2s and the Iowa sales tax certificate.

Donald Frazer, a banker and loan officer in Oelwein for 25 years, also testified. He has known Pamela Banke since working with her as a loan officer in 1981. He was under the impression that both Debtors were owners of the Top of the Line business. Both Debtors had applied for a loan with Mr. Frazer at Iowa State Bank in Oelwein in December 1999. They granted the bank a first lien on inventory, equipment and fixtures of the business, and a deed of trust on their personal residence. Both Debtors' names were on the loan agreement, d/b/a Top of the Line, and both Debtors signed the loan documents.

Mr. Frazer testified as a loan officer that, generally, it is customary to approve a loan based on conversations with the borrower, with documentation of ownership and liens to follow. He stated that, in his experience in the Oelwein banking community, it is likely funds will be disbursed to the loan applicant prior to the bank receiving all necessary documentation to perfect a lien on collateral. Financial statements are generally required for business loans above $5,000 or $10,000, depending on each individual bank's policies. Mr. Frazer testified that generally, if only a wife signs the loan documents, with no guarantee entered into with her husband, he would only expect to be able to collect from the wife.

C.J. Lensing testified as vice-president of Maynard Savings Bank. He knew Pamela Banke from working with her and considered her a friend at the time she applied for the $10,000 short-term loan from the Bank in March 2000. Mr. Lensing testified Mrs. Banke offered the boat as collateral. He stated that he probably would not have made the loan without the collateral. Because of Pamela Banke's offer to pledge the boat as collateral, Mr. Lensing assumed she was the owner of the boat. Mrs. Banke provided the identification numbers for the boat and trailer, but not for the motor. Mr. Lensing did not ask Mrs. Banke for proof of ownership and did not request that Hank Banke also sign the loan documents. He testified that all his dealings concerning Top of the Line were with Pamela Banke, although he always assumed the business was owned by both Debtors. Mr. Lensing testified there was no reason to check the title of the boat because he knew Mrs. Banke. At the time of the loan, he believed the boat was worth the $10,000 amount of the loan. Subsequently, in preparing for a June 2001 deposition, Mr. Lensing learned the value of the boat is $6,000.

The Bank did not file a financing statement to perfect its lien on the boat until December 2000. The filing was delayed in part because the Bank lacked the serial number for the motor. Mr. Lensing also testified that the relevant documents had slid beneath the printer on his desk and were lost for several months. The financing statement eventually filed with the

Secretary of State in December 2000 is missing the serial number for the motor.

Pamela Banke testified that Mr. Lensing suggested the boat as collateral when she called the Bank to apply for the business loan in March 2000. She states that her husband was out of town on a business trip at the time. Mrs. Banke got numbers from the trailer and the boat, but was unable to reach the motor in the garage to get that number. Within one hour of calling about the loan, she gave Mr. Lensing the numbers for the boat and trailer, signed the loan documents and received the loan proceeds.

Mrs. Banke testified that at the time she agreed to pledge the boat as collateral for the loan, she believed it was jointly owned by both her and her husband. She states that all of their property, through their 30 years of marriage, is jointly owned, except for the business and one vehicle she purchased which her husband did not drive or ride in. She testified Mr. Banke did not learn until preparing for filing bankruptcy that the boat was encumbered. Mr. Banke tried to sell the boat to pay attorney fees and received an offer of $4,000. It was at that time that Mrs. Banke told Mr. Banke that she had pledged the boat on the loan. Mrs. Banke testified that she never talked to her husband about using the boat as collateral. She did not consult him about the March 2000 loan and this was their normal procedure as she took care of the finances for the business.

Pamela Banke stated she did not learn until preparing for the bankruptcy filing that she was not listed as an owner of the boat. She testified that when she learned this, she felt sick because the effect was to break a trust with a friend, Mr. Lensing. Mrs. Banke knew she could not pledge property she did not own as collateral. She testified if she had known in March 2000 she was not an owner of the boat, she would not have pledged it to the Bank for the loan. Mrs. Banke admits she represented the boat was hers and the Bank relied on that representation.

Mr. Banke purchased the boat in the 1980s, and Mrs. Banke was not along when he registered it in his own name. Mr. Banke paid $25,000 of his own money for the boat and considered it a "sacred cow." He testified he did not know Mrs. Banke had pledged the boat as collateral on the Bank's loan. If he had been consulted beforehand, there would have been "serious discussions." In early 2001, Mr. Banke thought of selling the boat to pay attorney fees. He testified a scramble was on for money at the time.

In February 2001, Debtors signed over their business, Top of the Line, to Iowa State Bank. Soon after that time, they began discussing the possibility of resuming Mr. Banke's fishing guide business. Debtors discussed this idea with their attorney sometime in January or February. Mrs. Banke created a brochure for the guide business on a home computer on May 9, 2002, just after Debtors filed their Chapter 7 petition but before they filed the schedules on May 15. Henry Banke testified he did not make a final decision about resuming the fishing guide business until after Debtors filed their Chapter 7 petition, although they discussed it previously and he was considering all his options.

Mr. Banke testified Debtors operated the Top of the Line business together, although they had separate roles. He maintained daily operations of the store and Mrs. Banke took care of the finances. Mr. Banke never approached a bank for a loan for the business. Mrs. Banke did not talk with Mr. Banke about the loan from the Bank in March 2000. Mr. Banke testified this was a short-term loan and there was no need for them to discuss it. In retrospect, Mr. Banke does not agree his

wife should have made the loan pledging his boat as collateral.

## AVOIDANCE OF LIEN ON TOOLS OF THE TRADE

 Under § 522(f)(1)(B)(ii), a debtor may avoid liens on tools of the trade to the extent the lien impairs an exemption. *Owen v. Owen*, 500 U.S. 305, 307, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). As previously noted, Debtors claimed the boat, motor and trailer exempt and, with no timely objection filed, the property is deemed exempt. To avoid the Bank's lien on the boat under § 522(f), Debtors must prove that they were engaged in a trade or business and the tool was reasonably necessary to the trade. *In re LaFond*, 791 F.2d 623, 627 (8th Cir.1986). The Court focuses at the date of the petition to determine whether Debtors were engaged in a trade for lien avoidance purposes. *In re Janz*, 67 B.R. 553, 556 (Bankr.D.N.D.1986); *In re Ackerman*, No. 94–21846KD, slip op. at 7, 1995 WL 916986 (Bankr.N.D.Iowa April 12, 1995).

 Debtors may be entitled to lien avoidance if they have temporarily ceased their trade or business as of the petition filing date and intend to return to it. *See In re Mausser*, 225 B.R. 667, 671 (Bankr. N.D.Iowa 1998) (considering exemption of farming equipment and whether debtor was "engaged in farming"); *In re Indvik*, 118 B.R. 993, 1008 (Bankr.N.D.Iowa 1990) (considering 522(f)(2)(B) lien avoidance for farmer's tools of the trade). A temporary abatement of work in the trade absent intentional abandonment of the trade by the debtor may not be fatal to lien avoidance. *In re Ottoway*, 169 B.R. 581, 584 (Bankr.E.D.Va.1994).

 In order to determine that debtors are engaged in a trade or business, the Court considers the intensity of debtors' past business, the sincerity of their intentions to continue the business, and whether debtors are legitimately engaged in a business which currently and regularly uses the specific implements exempted and on which lien avoidance is sought. *See La-Fond*, 791 F.2d at 626; *Mausser*, 225 B.R. at 671. The prospects for returning to the business, evidence of the amount of time since the debtors had engaged in the trade and any other circumstances affecting the debtors' return to the trade should also be examined. *In re Richardson*, 47 B.R. 113, 119 (Bankr.W.D.Wis.1985). The key factor is the intention of the debtors to resume their business operations.

In *In re Johnson*, 230 B.R. 608, 609 (8th Cir. BAP 1999), the court considered avoidance of liens on tools of the trade for a debtor claiming to be engaged in farming. The debtor was employed full time at an off-farm business, was not currently farming in any fashion, had not farmed for two years prepetition except to help out his father, and did not know exactly when he would resume farming. *Id.* at 610. The court found the debtor was not a farmer and denied his motion to avoid liens on tools of the trade under § 522(f). *Id.*

 The Court concludes Debtors were not "engaged in a trade or business" using the boat as a tool of the trade either at the time of the Bank's loan, March 2000, or at the Chapter 7 petition date, April 2001. The last time Mr. Banke engaged in the guide boat business was in 1989. Debtors did not temporarily cease this work. Instead, they voluntarily abandoned it between 1989 and 2001 when Mr. Banke again began to earn income with his boat postpetition. Between 1989 and 2001, both Debtors were employed other than in the guide boat business. Both at the time of the loan and at the time of filing the bankruptcy petition, no business was being

conducted using the boat as a tool of the trade. Therefore, Debtors may not avoid the Bank's lien on the boat, motor and trailer under § 522(f)(1)(B)(ii).

## DISCHARGEABILITY UNDER § 523(a)(2)

The Bank argues the debt arising from its March 2000 loan to Pamela Banke is excepted from discharge under § 523(a)(2)(A) and (B). Subsection (B) covers only written statements "respecting a debtor's . . . financial condition." *First Nat'l Bank v. Pontow*, 111 F.3d 604, 608 (8th Cir.1997). As subsection (A) excludes such statements, the subdivisions are expressly mutually exclusive. *Id.* The Bank has not shown either Debtor gave a written statement respecting their financial condition under § 523(a)(2)(B). Therefore, the Court will consider dischargeability only under § 523(a)(2)(A).

 The Bank bears the burden to prove the elements of its claim under 11 U.S.C. § 523(a) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code. These considerations, however, 'are applicable only to honest debtors.' " *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987) (citations omitted).

 Section 523(a)(2)(A) states:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (1993). In the Eighth Circuit, a creditor proceeding under § 523(a)(2)(A) must prove the following elements: (1) the debtor made false representations; (2) at the time made, the debtor knew them to be false; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations; and, (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. *Van Horne*, 823 F.2d at 1287, as modified by *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (holding that " § 523(a)(2)(A) requires justifiable, but not reasonable, reliance").

## FRAUDULENT INTENT

The Bank has the burden to show that Debtor Pamela Banke knowingly misrepresented her ownership of the boat with intent to deceive the Bank into granting her a short-term loan in March 2000. Citing the Congressional Record, the Eighth Circuit has stated that only actual fraud, and not fraud implied in law satisfies § 523(a)(2)(A). *In re Ophaug*, 827 F.2d 340, 342 n. 1 (8th Cir.1987). The concept of recklessness has since appeared in bankruptcy decisions on § 523(a)(2)(A). *In re Gramolino* 183 B.R. 565, 567 (Bankr. E.D.Mo.1995).

The Eighth Circuit B.A.P. has cited one such decision in *In re Moen*, 238 B.R. 785, 790 (8th Cir. BAP 1999) (Koger, J.), stating "a false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement" of § 523(a)(2)(A). *Id.* (quoting *In re Duggan*, 169 B.R. 318, 324 (Bankr.E.D.N.Y.1994)).

This Court has stated that a false representation or misrepresentation may be established by a showing of fraudulent intent or reckless disregard for the truth which is tantamount to a willful misrepresentation. *In re Frye,* No. 85–0064F, slip op. at 3 (Bankr.N.D.Iowa March 10, 1987) (Melloy, J.). It has also accepted the principle that reckless indifference may establish intent to deceive in a § 523(a)(2)(B) false financial statement claim. *In re Johnson,* No. 95–6074KW, slip op. at 6 (Bankr.N.D.Iowa Feb. 12, 1996) (Kilburg, J.).

In this vein, reckless disregard for the truth of a representation satisfies the element that the debtor has made an intentionally false representation in obtaining credit. *In re Wyant,* 236 B.R. 684, 699 (Bankr.D.Minn.1999) (quoting *In re Anastas,* 94 F.3d 1280, 1285 (9th Cir.1996)). Fraud is proved if it is shown that a false representation has been made recklessly, careless of whether it is true or false, and evidencing more than mere negligence. *Palmacci v. Umpierrez,* 121 F.3d 781, 787, 788 (1st Cir.1997). The court's focus should be on whether the surrounding circumstances or the debtor's actions appear so inconsistent with self-serving statements of intent that the proof leads the court to disbelieve the debtor. *Id.* at 789.

The court in *Gramolino* refused to accept the plaintiff's argument that the standard of actual knowledge required under § 523(a)(2)(A) has been diluted by the recognition of a standard that is based on some degree of reckless conduct. 183 B.R. at 568 (Barta, J.). Likewise, in *In re Lett,* 238 B.R. 167, 181–82 (Bankr.W.D.Mo.1999) (Venters, J.), the court stated that, under *Ophaug,* "it must be determined that the debtor subjectively intended to deceive the creditor, rather than inferred that a debtor had the requisite intent because he or she made a representation that a reasonable person should have known was false." Instead, circumstantial evidence or inferences drawn from a course of conduct using a list of factors or badges of fraud can determine whether the debtor had the actual intent to deceive. *Lett,* 238 B.R. at 182; *Van Horne,* 823 F.2d at 1287–88; *see In re Pickett,* 234 B.R. 748, 755 (Bankr. W.D.Mo.1999) (setting out 12 "badges of fraud" applicable in credit card debt cases); *In re Miller,* No. 97–9007 W, slip op. at 5 (Bankr.N.D.Iowa May 12, 1998) (same).

Mrs. Banke pledged the boat as collateral for her short-term loan with the Bank in March 2000. She denies knowing her husband was the sole owner of the boat, motor and trailer until a short time before filing the Chapter 7 petition in April 2001. Other cases concerning a pledge of collateral are instructive. In *In re Stanton,* 193 B.R. 408, 409 (Bankr.W.D.N.Y.1996), a debtor took proceeds of a loan before purchase of a vehicle was final. The court found actual fraud in the debtor's failure to fulfil the commitment to purchase the vehicle and give the creditor a security interest in it. In *In re Mayer,* 164 B.R. 83, 85 (N.D.Ill.1994), *aff'd,* 51 F.3d 670 (7th Cir. 1995), a debtor used a purchase order which was not authentic as partial collateral for a loan. The Court found that the debtor's pledge of the unconfirmed purchase order as collateral for a loan was reckless at the very least, which is sufficient to establish a case under § 523(a)(2)(A). *Id.* In *In re Bastrom,* 106 B.R. 223, 228 (Bankr.D.Mont.1989), debtors pledged as collateral vehicles not owned by them which were owned by their corporation. The court found the debtors knew or should have known the corporation was the owner and concluded debtors made false representations under § 523(a)(2)(A). *Id.*

This case hinges on what Mrs. Banke knew concerning the ownership of the boat

when she pledged it as collateral to the Bank in March 2000. Mrs. Banke testified she believed she was a joint owner of the boat, she and her husband jointly owned all their other property, and she was "sick" to learn her name was not on the title as it broke a trust with her friend, C.J. Lensing, at the Bank. The surrounding circumstances reveal other relevant facts. Mr. Banke was out of town at the time of the transaction. The boat was his "sacred cow" and Debtors treated it as his special property. Mr. Banke purchased the boat in the mid 1980s with his own money and registered it, alone, in his own name. Debtors' Exhibit C and D evidence renewal of the boat and trailer registrations issued 3/09/2001. Both list Henry Bank as the sole owner. As the trailer registration is effective for one year, the Court can assume Debtors also renewed registration in 2000, coincidentally in the same month Mrs. Banke entered into the loan transaction with the Bank.

■ Rule 52(a) of the Federal Rules of Civil Procedure provides that: Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge credibility of the witness . . .

In weighing the credibility of a witness, the Court must examine the evidence presented and evaluate the testimony of the witness including variations in demeanor as well as changes in the tone of voice. *Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The Court can assess credibility based upon the content of the testimony as well as the Court's own experience with the way people act. *In re Carrigan*, 109 B.R. 167, 170 (Bankr.W.D.N.C.1989). Where two permissible views of the evidence exist, it is the responsibility of the

Court to weigh the evidence presented including the credibility of the witnesses and make a choice between them. *In re Waugh*, 95 F.3d 706, 712 (8th Cir.1996); *In re Dullea Land Co.*, 269 B.R. 33, 36 (8th Cir. BAP 2001) (discussing bankruptcy court's evaluation of evidence and credibility of witnesses).

■ Mrs. Banke is an intelligent woman and well informed regarding loan transactions, being a loan officer herself. She operated her own business, taking care of all the financial obligations and transactions of the business. She was similarly knowledgeable about the family finances, including family assets such as the boat, motor and trailer. Having heard Mrs. Banke's and Mr. Banke's testimony, and in light of their demeanor on the witness stand, the Court concludes Mrs. Banke's credibility regarding her knowledge of the ownership of the boat is suspect. Based on the entire record and the demeanor of the various witnesses, this Court concludes that Mrs. Banke knew she was pledging an asset as collateral to the Bank in which she did not have an ownership interest. The evidence presented is inconsistent with Mrs. Banke's self-serving statement of intent to the extent that it leads the court to disbelieve her. Thus, the Bank has met its burden to prove that Mrs. Banke made a false representation which she knew to be false, with the intention and purpose of deceiving the Bank into entering into the loan transaction. This finding satisfies the elements of § 523(a)(2)(A) including the fact that Mrs. Banke knowingly misrepresented her ownership of the boat.

## THE BANK'S RELIANCE

■ Under § 523(a)(2)(A), only justifiable, not reasonable, reliance is required. *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The standard for showing justifiable reli-

ance under § 523(a)(2)(A) is fairly low. *In re Guske*, 243 B.R. 359, 363 (8th Cir. BAP 2000). It is "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." *Field*, 516 U.S. at 71, 116 S.Ct. 437. Courts have found that a party may justifiably rely on a misrepresentation even when the party could have ascertained its falsity by conducting an investigation. *In re Biondo*, 180 F.3d 126, 135 (4th Cir.1999) (noting justifiable reliance is a minimal standard); *Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998). However, "if there are any warning signs ... either in the documents, in the nature of the transaction, or in the debtor's conduct or statements, the creditor has not justifiably relied on [a] representation." *Guske*, 243 B.R. at 363–64.

■ In the circumstances, the Court concludes the Bank has shown it justifiably relied on Mrs. Banke's representation that she owned the boat and could pledge it as collateral for the March 2000 loan. The loan officer, C.J. Lensing, knew Mrs. Banke and her background. He knew of her professional experience as a bank loan officer. They considered each other to be friends. In these narrow circumstances, Mr. Lensing justifiably believed he could rely on Mrs. Banke's representations in granting the loan secured by the boat. The Bank has met its burden to show justifiable reliance under § 523(a)(2)(A). The loan debt to the Bank is excepted from Pamela Banke's discharge.

### HENRY BANKE'S LIABILITY

■ The Bank argues Henry Banke is liable on the loan and Pamela Banke's fraud can be imputed to him, excepting the debt from his discharge, as well. It asserts Mrs. Bank had apparent authority to pledge Mr. Banke's boat as collateral for the loan. An agent can only bind the principal where the agent has either real or apparent authority. *Beyer v. Central Life Ins. Co.*, 199 Iowa 245, 201 N.W. 577, 578 (1925). Apparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing. *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000). It must be determined by what the principal does, rather than by any acts of the agent. *Id.*

■ In Iowa, one partner's apparent authority to act on behalf of another partner can be established by the partner's course of conduct. *Chapman's Golf Ctr. v. Chapman*, 524 N.W.2d 422, 426 (Iowa 1994); *Cooperative Fin. Ass'n, Inc. v. Garst*, 917 F.Supp. 1356, 1380 (N.D.Iowa 1996). This apparent authority is also statutorily based. *Cooperative Finance*, 917 F.Supp. at 1380; Iowa Code § 486.9(1). Under the Iowa Code, in order to bind a partner, the Court must find the partner executing the agreement apparently acted to carry on partnership business in the usual way. *Kristerin Dev. Co. v. Granson*, 394 N.W.2d 325, 329 (Iowa 1986).

■ Generally, in the absence of an agency relationship such as a partnership, courts do not impute wrongdoing between spouses under § 523(a)(2)(A). *In re Tsurukawa*, 258 B.R. 192, 198 (9th Cir. BAP 2001). If a husband and wife are partners in a business, separate from the marital relationship, both may be held responsible for the fraudulent acts of one of them. *Spence v. Tatum*, 960 F.2d 65, 66 (8th Cir.1992); *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 (8th Cir.1987). To prove partnership liability between a husband and wife, the creditor must establish the par-

ties had the intent to form a partnership or partnership by estoppel. *Spence*, 960 F.2d at 68. Partnership by estoppel may be indicated where both spouses share in the management of the business and share in profits, as opposed to sharing gross revenues as a family. *Id.; Sunkyong Int'l*, 828 F.2d at 1249. In the Eighth Circuit, proof of one spouse's fraud does not justify exception from discharge regarding the other spouse unless the innocent spouse knew or should have known of the wrongdoing. *In re Walker*, 726 F.2d 452, 454 (8th Cir.1984).

■ No partnership agreement exists regarding the Top of the Line business. To the contrary, all documents show the business belonged solely to Debtor Pamela Banke. Henry Banke received a salary from the business but did not directly receive business profits. Both Debtors appear to have been involved in management decisions. Mrs. Banke, however, solely managed the finances of the business. The Bank has failed to show Mrs. Banke had apparent authority to bind Mr. Banke to the loan and the pledge of his boat as collateral. Focusing on Mr. Banke's conduct, there is no evidence he knowingly permitted Mrs. Banke, or held her out as possessing authority, to enter into the loan with the Bank, pledging his boat as collateral. Based on the entire record, the Court concludes Henry Banke is not liable on Pamela Banke's loan transaction with the Bank in March 2000.

■ Even if Mr. Banke was liable on the loan, considering the circumstances, the Court cannot find Mr. Banke knew or should have known of Mrs. Banke's fraudulent conduct in relation to the pledge of the boat as collateral for the short-term loan from the Bank. Mr. Banke was out of town at the time and had no knowledge of the loan or security agreement until many months later. In this situation, the Court

concludes Mrs. Banke's fraudulent conduct cannot be imputed to Mr. Banke for purposes of § 523(a)(2)(A). Though the Court concludes that Mr. Banke has no liability as a result of this loan transaction, to avoid any ambiguity to the extent Henry Banke has any liability from the loan transaction, the debt to the Bank is not excepted from his discharge.

## VALIDITY OF THE LIEN

Debtors request the Court determine that the security interest in the boat, motor and trailer is ineffective and order that the UCC–1 be released as it clouds Henry Banke's title. Although this argument does not appear in the pleadings pretrial, Debtors raise it in their post-trial brief. The Bank addresses it in its reply brief without objection. Thus, this argument is tried by implied consent under Rule 15(b). As the matter can be determined on the record presented, the Court finds it is appropriate to dispose of this issue as well.

■ Under Iowa Code sec. 554.9203(1)(c) (2000), in effect at the time of the loan transaction, the formal requisites of an enforceable security interest include the requirement that the debtor has rights in the collateral and has signed a security agreement. If the debtor cannot claim an interest in the collateral, a security interest is not enforceable against the collateral. *Schultz v. Security Nat'l Bank*, 583 N.W.2d 886, 889 (Iowa 1998).

■ Only Pamela Banke signed the security agreement with the Bank. Only Henry Banke's name was on the title and registration of the boat, motor and trailer. This Court has concluded that Mrs. Banke had no ownership interest in the boat and did not have authority to bind Henry Banke in the loan transaction. Simply stated, a person who has no property interest in an item of property cannot create

a binding lien on the property of another. Thus, the security agreement is unenforceable and does not attach to the boat.

 Even if the security agreement was enforceable, the Bank's attempt to perfect it by filing a financing statement is insufficient. Iowa Code sec. 554.9402(1) states the requirements of an effective financing statement. It must give the name of the debtor and be signed by the debtor. *In re Commercial Millwright Serv. Corp.*, 245 B.R. 597, 601 (Bankr.N.D.Iowa 1999). Pursuant to sec. 554.9105(1)(d) defining the term "debtor", "[w]here the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision dealing with the collateral."

Henry Banke is the owner of the boat, motor and trailer. Neither his name nor his signature as a debtor appears on the Bank's financing statement. Therefore, any security interest the Bank had in the boat is insufficiently perfected and unenforceable.

## CONCLUSIONS

The boat, motor and trailer did not constitute tools of the trade at the petition date. Therefore, the Bank's lien is not avoidable under § 522(f)(1)(B)(ii). The Bank has carried its burden under § 523(a)(2)(A) to except the debt from Pamela Banke's bankruptcy discharge. Henry Banke is not liable on the debt as Mrs. Banke did not have apparent authority to bind him to the loan transaction. The debt is included in Mr. Banke's discharge. The security agreement and financing statement fail to identify Mr. Banke as a party and owner of the property pledged as collateral for the Bank's loan. Therefore, the Bank's lien never attached and is unenforceable against the boat, motor and trailer.

**WHEREFORE,** Debtors may not avoid the Bank's lien on the boat, motor and trailer under § 522(f)(1)(B)(ii) as impairing an exemption in tools of the trade.

**FURTHER,** the Bank's claim from the March 2000 loan is excepted from Debtor Pamela Banke's discharge under § 523(a)(2)(A).

**FURTHER,** Debtor Henry Banke is not liable for the Bank's claim, which is included in his discharge.

**FURTHER,** the Bank's lien does not attach to the boat, motor and trailer and is unenforceable.

**FURTHER,** the Bank shall release its lien on the boat, motor and trailer and terminate the U.C.C. financing statement.