**In re Lynn E. HENKE and Mary L. Henke, Debtors.**

No. 02–32042.

United States Bankruptcy Court, D. North Dakota.

May 9, 2003.

LaRoy Baird, III, LaRoy Baird, P.C., Bismarck, ND, for debtor.

James P. Rausch, Rausch Law Office, Bismarck, ND, Kent Rockstad, Special Assistant United . States Attorney, Fargo, ND, for creditors.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court is the motion by the Debtors, Lynne E. Henke and Mary L. Henke, to avoid the lien of the United States of America Farm Service Agency (FSA) in the tools of the trade of the Debtors pursuant to 11 U.S.C. § 522(f).

The Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on December 27, 2002. FSA claims a security interest in property of the Debtors. The Debtors claimed as exempt the property in which FSA has a security interest and filed a motion to avoid FSA's lien in the property. FSA objected to the Debtors' motion, asserting that the Debtors' motion did not include information sufficient for FSA to fully evaluate the extent, if any, to which the Debtors may avoid its lien. As examples, FSA argues the Debtors' motion does not identify the value of the Debtors' interest in the property nor the amount of the lien against the property. FSA also argues that all or a portion of the property listed in the Debtors' motion should not be considered implements or tools of the Debtors' trade.

This matter was heard via video conference on April 22, 2003.

### FACTUAL BACKGROUND

In 1995, the Debtors began operating a cattle farm on 80 acres near Center, North Dakota. In 1996, Debtor Lynn Henke branched the operation to include trucking by purchasing trucking equipment and primarily hauling cattle. Lynn Henke testified that the trucking operation led the Debtors to bankruptcy. By February 2003, the Debtors' cattle were liquidated— with the exception of four head belonging to the Debtors' children—and the trucking

equipment was surrendered. Lynn Henke currently drives truck for another company, and Mary Henke is a certified nursing assistant.

By virtue of a duly perfected security interest, FSA has a secured interest in various items of farm machinery and equipment including:

1.  1982 JD baler
2.  1976 Graves bale wagon
3.  1981 IHC 14–foot chisel plow
4.  1981 JD 6–foot drill/packer
5.  1980 Gehl 130 BU feeder wagon
6.  1989 Pincor 20 KW generator
7.  1984 dual loader/grapple
8.  1979 AC 7–foot mower
9.  1970 Melroe 5x16 plow
10.  1970 2 PT posthole digger
11.  1985 NH 55 rake
12.  1988 Travel–a–Long G-neck 7x20 stock trailer
13.  1995 Foremost squeeze chute
14.  1975 IHC 966 tractor
15.  1972 IHC 1066 tractor
16.  1956 IHC 300 tractor
17.  1999 TSC 3 PT bale carrier
18.  1974 Oliver 12–foot windrower
19.  1952 Ford 1½-ton truck
20.  1991 Ford 350 4x4 1–ton pickup

The Debtors exempted all of the property enumerated above in their amended Schedule C. Lynn Henke testified that although some are not in working order, all of these pieces of equipment and machinery are used in the cattle operation and were acquired prior to the Debtors' signing the security agreement with FSA with the exception of the 1999 bale carrier. Lynn Henke stated that the bale carrier was acquired in 1999 for $115.00 with funds from the trucking operation account.

The Debtors introduced into evidence a rental agreement they entered with Wallace and Dorothy Arensmeier in early 2003. The agreement provides that the Debtors will rent approximately 250 acres of pastureland for the year 2003 for $2,000 due in February 2003. Lynn Henke testified that a neighbor, Michael Eggers, loaned him the $2,000 to pay the Arensmeiers. Although the Debtors do not currently have cattle, Lynn Henke testified that they have the present opportunity and desire to take on either share cattle or lease cattle. He stated that he has not taken advantage of these opportunities— and thus currently has no cattle—because the equipment at issue is necessary to run a cattle operation. If successful in avoiding FSA's lien, he testified that he will be able to obtain cattle through either share or lease within a couple of weeks. The loan from Eggers is due when the cattle are pastured; if the Debtors are unable to continue the cattle operation, Eggers will use the 250 acres for his cattle operation.

On cross examination, Lynn Henke conceded that he does not have experience running a share cattle operation. He also stated that some of the equipment and machinery will have to be repaired and that he has not determined the cost of necessary repairs. Although the Debtors have not listed cattle operation expenses on their Schedule J, Lynn Henke acknowledged that the cattle operation will generate additional expenses. When asked how the operation will be financed, he said that he hopes to buy feed through his employment and to finance the operation through the money earned from his trucking job. The Debtors have 20 acres each of wheat and barley, although Lynn Henke testified that he does not yet have either barley seed or fertilizer. He also said that his mother has agreed to help him pay for the necessary machinery and equipment repairs and that he will be able to take time off work for calving.

## DISCUSSION

The Debtors argue that the secured claim of FSA is a nonpossessory, nonpurchase money security interest in the Debtors' tools of the trade which they hold primarily for use by themselves or their dependents. Because FSA's security interest impairs the exemption they have claimed in the property, the Debtors assert the security interest should be avoided pursuant to 11 U.S.C. § 522(f). Section 522(f) provides in relevant part:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\*    \*    \*    \*    \*    \*

(B) a nonpossessory, nonpurchase-money security interest in any—

\*    \*    \*    \*    \*    \*

■ (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor[.]

11 U.S.C. § 522(f). As the movants, the Debtors bear the burden of proving by a preponderance of the evidence all the elements required to establish their entitlement to lien avoidance under section 522(f) of the Bankruptcy Code. *See Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001). Thus, the Debtors must establish that FSA's lien is a nonpossessory, nonpurchase-money security interest and that the property secured is of the type contemplated by section 522(f)(1)(B)(ii).

As regards the first element, Lynn Henke testified that all of the pieces of equipment and machinery at issue were acquired prior to the Debtors' signing the security agreement with FSA with the exception of the 1999 bale carrier. He stated that the bale carrier was acquired in 1999 for $115.00 with funds from the trucking operation account. FSA did not dispute either in its objection to the Debtors' motion to avoid FSA's lien or at the hearing on the matter that its interest in the Debtors' property at issue is a nonpossessory, nonpurchase-money security interest. Thus, the Debtors proved by a preponderance of the evidence that FSA's security interest is a nonpossessory, nonpurchase-money security interest.

■ The next issue is whether the Debtors' property at issue constitute implements or tools of the trade of the Debtors sufficient to avoid the security interest of FSA. The Congressional intent behind the tool of the trade avoidance provision in section 522(f)(2)(B) is to afford a debtor a fresh start and to preserve the means to continue the business or profession in which he or she was engaged when the petition was filed. In determining whether a debtor is a farmer under section 522(f), the Eighth Circuit requires a court to:

take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that [the] debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought.

*Production Credit Ass'n of St. Cloud v. LaFond (In re LaFond)*, 791 F.2d 623 (8th Cir.1986) (citations omitted).

■ This court has adopted the test expressed in *In re LaFond* and has held that tools necessary to the trade in which the debtor was engaged at the time of filing may still qualify as tools of the trade under section 522(f)(2)(B)—even if the

debtor is presently engaged in some other pursuit—provided that the debtor has only temporarily ceased the vocation to which the tools belong and is sincere in his or her intent to shortly resume that vocation. *In re Janz,* 67 B.R. 553, 556 (Bankr.D.N.D. 1986); *see also Flick v. U.S.,* 47 B.R. 440 (W.D.Pa.1985) (although as a general rule debtor must be engaged in relevant trade on date of bankruptcy petition, temporary abatement of work in the trade may not be fatal to claimed exemption for tools of the trade); *Maynard Savings Bank v. Banke (In re Banke),* 275 B.R. 317, 325 (Bankr. N.D.Iowa 2002) (debtors may be entitled to lien avoidance if they have temporarily ceased their trade or business as of the petition filing date and intend to return to it); *In re Schuette,* 58 B.R. 417 (Bankr. D.Minn.1986) (the debtor, while not presently engaged in farming, expressed an intention of resuming farming on land still in his possession; this expression of intent was sufficient to demonstrate that the debtor's hiatus from farming was temporary and that he intended to return to it as a vocation); *In re Johnson,* 19 B.R. 371 (Bankr.D.Kan.1982) (generally, a debtor must be engaged in trade on the date of the petition in order to claim tools of that trade as exempt; however, when a debtor had only temporarily ceased the vocation at the time of the petition filing, tools of trade may still be exemptible). Additionally, the prospects for returning to the business, evidence of the amount of time since the debtors have engaged in the trade, and any other circumstances affecting the debtors' return to the trade should be considered. *In re Banke,* 275 B.R. at 325; *Johnson v. Richardson (In re Richardson),* 47 B.R. 113, 119 (Bankr.W.D.Wis. 1985).

Two recent cases are factually similar to the case at bar and merit discussion. In *Johnson v. Border State Bank (In re Johnson),* 230 B.R. 608 (8th Cir. BAP 1999), the debtor had worked on his father's farm following high school. Thereafter, in 1985, he began his own farming operations. At the time of filing, June 25, 1998, he was not farming on his 73–acre homestead, but he owned 35 cows and 35 calves that he kept at his father's farm. The debtor's father raised and tended to the cows in exchange for a part of the profits from the sale of the cows. The debtor was not involved in the care of the cows; instead, he was a full-time employee of a window company and had been employed with the company for 14 years. The debtor had not derived any income from the farm since 1996 and listed no income or expenses from the farming operation in his bankruptcy schedules. The debtor stated that he did not farm the land on which the homestead sat, and he did not know exactly when he might start farming again. In concluding that the debtor did not satisfy the test set forth in *In re LaFond,* the court stated, "Although [the debtor] may have been engaged in farming with sufficient intensity at some point in the past, he conceded at the hearing that he is not currently engaged in the activity of farming, he has not farmed since 1996, and he does not know exactly when he will resume farming." *In re Johnson,* 230 B.R. at 610. The court also opined that "[the debtor's] statements regarding his hopes or intentions to farm ... at some time in the future are not enough to satisfy the *LaFond* test." *Id.* at 611. Thus, the debtor was unable to protect his farm machinery and equipment as tools of his trade under section 522(f).

The second factually-similar case is *In re Larson,* 260 B.R. 174 (Bankr.D.Colo. 2001). The husband and wife debtors were both from families that had been in the farming and ranching business for four generations. The debtors engaged in agriculture and/or ranching as their princi-

ple occupation from the mid- to late–1970s until 1998. During this period the debtors farmed as many as 1,400 acres of crops and maintained a herd of approximately 180 cattle. The debtors' children also helped in the farming operation. In the 1990s, the debtors suffered several bad years of crops and incurred losses in their farming operation. Due to their financial hardships, the debtor-husband began trucking in 1998 and the debtor-wife obtained employment cleaning houses in the area in 1999 to supplement and help sustain the farming business. In August 1999, the debtor-wife also began trucking. At the time of the bankruptcy filing, September 11, 2000, both debtors were actively involved in trucking, each working approximately 40 hours per week. The debtors owned no land on the date of filing but did own farming equipment and cattle. The farming equipment was located on the debtor-husband's father's farm and the cattle were grazing on land owned by another person. The debtors rented a rural farmhouse. In concluding that the debtors were engaged in agriculture as their principle occupation, the bankruptcy court identified the following facts as distinguishable from those in *In re Johnson:* the debtors were still raising cattle themselves; the debtors were employed as truckers during only the two previous years; all of the trucking income was used to pay for the farming and ranching business and to support the family; and the debtors expressed a sincere and unqualified intent to resume farming as a full-time occupation. *In re Larson,* 260 B.R. at 188 n. 13.

The facts of the instant case do not neatly parallel the facts of either of these cases; rather, they fall somewhere in between. Applying the facts of this case to the *In re LaFond* test, the Court notes that the intensity of the Debtors' past farming activities seems to be considera-ble. Lynn Henke testified that he has been in the cattle business most of his life, owning his first cattle when he was 13 or 14 years old. Also, although the facts of the Debtors' employment prior to moving to the farmstead in North Dakota were not made clear at the hearing, Lynn Henke did reference having worked on a farm in Wyoming. However, the Debtors were not engaged in farming at the time of their petition filing, nor have they resumed farming since the petition filing. Moreover, although Lynn Henke testified as to his intention to continue farming, the prospect of success of the operation is questionable at best. He testified that 40 acres of the their land is farmable, 20 acres each in wheat and barley, but that he has not yet purchased the barley seed or fertilizer. Although the Debtors did not schedule any farm-related expenses, Lynn Henke testified that he "hopes" to buy feed through his employment and "plans" to have money to finance the farming operation. Next, he testified that the machinery and equipment at issue are necessary to the farming operation, but that several of the items are not currently in working condition and that he does not know how much it will cost to make the necessary repairs. He stated that "hopefully" he will get a loan to pay for the repairs and that he has talked to his mother and she has agreed to help him. He was similarly unable to identify how much it would cost to run a share or lease cattle operation, and although he does not yet have a share or lease cattle agreement with anyone, that he "hopes" to make such an agreement. He conceded that the Debtors plan to surrender the 80–acre farm currently held under contract for deed, but that it could be rented after the foreclosure. Moreover, he stated that the $2,000 paid by Michael Eggers for the rent of the Arensmeiers' 250 acres of pasture-land would be due when the cattle were

put in the pasture, but he did not explain where he would obtain the money to pay Eggers. In sum, the court is not convinced that the Debtors have any reasonable prospect of returning to the farming business, and Lynn Henke's statements regarding his "hopes" are not enough to satisfy the *LaFond* test. The Debtors have failed to meet their burden of proving by a preponderance of the evidence that the secured property at issue constitutes tools of the trade, and therefore, the Debtors may not avoid FSA's lien in the property under section 522(f).

## *CONCLUSION*

Based on the foregoing, the United States of America Farm Service Agency's objection to the motion to avoid the lien on the property claimed as exempt by the Debtors, Lynn E. Henke and Mary L. Henke, is SUSTAINED. The Debtors' motion to avoid the lien in tools of the trade pursuant to 11 U.S.C. § 522(f) is DENIED.

**SO ORDERED.**